IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Justin H.,[1] | ) | C/A No.: 6:25-cv-07319-RMG-KFM |
| | ) | |
| Plaintiff, | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[2]  The plaintiff, who is proceeding *pro se*, brought this action pursuant to Section 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits under Title XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

An application for supplemental security income ("SSI") benefits was filed on October 26, 2021,[3] on behalf of the plaintiff (who was under the age of 18 at that time) (Tr. 221–30).  The application alleged disability beginning on October 1, 2021 (Tr. 222).  The

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.

[2] A report and recommendation is being filed in this case in which one or both parties declined to consent to disposition by the magistrate judge.

[3] The ALJ's decision records the application date as October 1, 2021 (Tr. 25).

plaintiff attained the age of 18 on January 2, 2023[4] (Tr. 30).  The application was denied initially (Tr. 109–21) and on reconsideration (Tr. 122–38) by the Social Security Administration ("SSA").  On January 11, 2024, the plaintiff requested a hearing (Tr. 154).  On June 3, 2024, an administrative hearing took place in Columbia, South Carolina via telephone, at which the plaintiff, represented by counsel; Theresa Montgomery, the plaintiff's aunt; and Michael Dorsey, an impartial vocational expert; appeared and testified before the administrative law judge ("ALJ") assigned to the case (Tr. 52–108).  On June 13, 2024, the ALJ considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 25–51).  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on June 9, 2025 (Tr. 1–5).  The plaintiff then filed this action for judicial review (doc. 1).

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant was born on January 3, 2005, and was therefore an adolescent on October 1, 2021, the application date (e.g., 20 C.F.R § 416.926a(g)(2)(v)).  The claimant attained age 18 on January 2, 2023 (20 C.F.R. § 416.120(c)(4)).
>
> (2)    The claimant has not engaged in substantial gainful activity since October 1, 2021, the application date (20 C.F.R. §§ 416.924(b), 416.920(b) and 416.971 *et seq.*).
>
> (3)    Since the application date, the claimant has had the following severe combination of impairments: disruptive mood dysregulation disorder (DMDD); generalized anxiety disorder; attention deficit hyperactivity disorder (ADHD); binge eating disorder; asthma; and obesity (20 C.F.R. § 416.924(c) and 416.920(c)).

---

[4] Under Social Security regulations, an individual "attains a given age on the first moment of the day preceding the anniversary of his birth corresponding to such age."  20 C.F.R. § 416.120(c)(4).

(4)     Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926).

(5)     Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926a).

(6)     Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing, or functionally equaled the listings, the claimant was not disabled prior to attaining age 18 (20 C.F.R. § 416.924(a)).

(7)     The claimant has not developed any new impairment or impairments since attaining age 18.

(8)     Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments (20 C.F.R. § 416.920(c)).

(9)     Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925, and 416.926).

(10)     After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) with: no more than frequently stooping, kneeling, crouching, crawling, and balancing (as defined by DOT/SCO); no more than frequently climbing ramps and stairs; no more than occasionally climbing ladders, ropes, or scaffolds; no more than frequent exposure to hazards such as unprotected heights and dangerous machinery; no more than frequent exposure to dust, fumes, gases, odors, and pulmonary irritants; no more than frequent exposure to extremes of humidity, heat, or cold; limited to simple, routine, and repetitive tasks and simple work-related decisions, but is able to maintain concentration, persistence, and pace for periods for at least two hours at a time, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week; no jobs that require more than occasional close, "team-type" interaction with coworkers, sometimes referred to as tandem work; no jobs that require

more than occasional interaction with the general public; can only tolerate no more than occasional change in a routine work setting; and, no jobs that involve financial transactions or the handling of money.

(11)    The claimant has no past relevant work (20 C.F.R. § 416.965).

(12)    The claimant was born on January 3, 2005, and attained age 18 on January 2, 2023.  He is a younger individual age 18-49, on the date of attainment of age 18 (20 C.F.R. § 416.963).

(13)    The claimant has a limited education (20 C.F.R. § 416.964).

(14)    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).

(15)    Since the date the claimant attained age 18, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969a).

(16)    The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since October 1, 2021, the date the application was filed (20 C.F.R. §§ 416.924(a) and 416.920(a)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Because the plaintiff was under the age of 18 when his disability application was filed and turned 18 years old during the course of his claim, the ALJ evaluated his case under both the childhood and adult standards of disability (Tr. 25–51).

For purposes of eligibility for Title XVI children's disability benefits, an individual under age 18 will be considered disabled if he has a "medically determinable physical or mental impairment or combination of impairments that causes marked and

severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner's regulations establish a three-part evaluation process:  (1) determine whether the child is currently engaged in substantial gainful activity.  If so, he is not disabled; if not, (2) determine whether the child has a severe impairment or impairments.  If not, he is not disabled; if so (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment listed at 20 C.F.R. pt. 404, subpt. P, app.1 (the Listings).  If not, he is not disabled.  20 C.F.R. § 416.924(a)–(d).  If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of a Listing, the Commissioner will decide whether it results in limitations that functionally equal such requirements.  *Id.* § 416.926a(a).  To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of six domains, broad areas of functioning intended to capture all of what a child can or cannot do.  *Id.* § 416.926a(b)(1). These domains are:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well being.  *Id*.

To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains or an "extreme" limitation in one domain.  *Id.* § 416.926a(a).  The Commissioner will find that a claimant has a "marked" limitation in a domain when the claimant's impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(2)(i).  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme" and may arise when several activities or functions are limited or when only one is limited.  *Id.* The Commissioner will find that the claimant has an "extreme" limitation in a domain when

the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i). Extreme limitation also means a limitation that is "more than marked" and may arise when several activities or functions are limited or when one is limited. *Id.*

With regard to adult claimants, under 42 U.S.C. § 1382c(a)(3)(A), (H)(i), as well as pursuant to the regulations formulated by the Commissioner, a claimant has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1, (4) can perform his past relevant work, and (5) can perform other work. *Id.* § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 416.920(a)(4).

A claimant must make a *prima facie* case of disability by showing he is unable to return to his past relevant work because of his impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 192.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.   However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*.  Consequently, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **ANALYSIS**

The plaintiff argues that the ALJ's decision should be reversed because the ALJ erred by (1) failing to appropriately apply the listings (doc. 6 at 2–5); and (2) by failing to properly explain the residual functional capacity ("RFC") findings (*id*. at 5–6).  The plaintiff requests that this matter be remanded with an award of benefits (*id*. at 6).   The Commissioner, on the other hand, asserts that the ALJ's decision is supported by substantial evidence, should be affirmed, and that benefits should not be awarded (doc. 7 at 7–12).

### *Listing Analysis*

As noted, the plaintiff argues that the ALJ failed to properly apply the listings (doc. 6 at 2–5).  As an initial matter, the plaintiff's assertions of error with respect to the listing analysis contains a list of all of the listings identified in the ALJ's decision, but only

7

offers argument regarding whether the plaintiff met[5] two adult listings evaluated by the ALJ – Listings 12.04 and 12.06 (*see* doc. 6 at 2–5).  Courts have held that when a plaintiff raises an issue in a perfunctory manner, the issue is deemed waived.  *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (noting that the plaintiff's "perfunctory argument" was arguably abandoned (citing *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (finding that issues raised in a perfunctory manner "without elaboration or legal argument" "unaccompanied by some effort at developed argumentation" were deemed waived (internal citations and quotation marks omitted)); *Parms v. Colvin*, C/A No. 1:13-cv-01002, 2015 WL 1143209, at *8 n.10 (M.D.N.C. Mar. 13, 2015) (noting that the "Court need not address . . . perfunctory arguments by counsel), *memorandum and recommendation adopted by* doc. 32 (M.D.N.C. Mar. 31, 2015).  Indeed, the court is not required to rummage through the administrative record to construct and present a well-supported position for the plaintiff.  *See Hayes v. Self-Help Credit Union*, C/A No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (noting that "[i]t is not the role or the responsibility of the Court to undertake the legal research needed to support or rebut a perfunctory argument (internal citations omitted)).  As such, the undersigned will only specifically address the ALJ's evaluation of Listings 12.04 and 12.06.[6]

---

[5] The heading in the plaintiff's brief refers to meeting or *equaling* a listing, but he has not provided any argument for why his impairments equaled a listing; thus, as noted with the other listing assertions of error, it is deemed waived.

[6] The Commissioner also argues that the plaintiff failed to challenge any findings from the ALJ's decision regarding the plaintiff prior to age 18 and that any such challenge has now been waived (doc. 7 at 4).  The undersigned agrees with the Commissioner that the plaintiff has waived review of the determination regarding the time period before he attained age 18.

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of a claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (explaining that, without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"). "In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." *Beckman v. Apfel*, C/A No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (quoting *Cook*, 783 F.2d at 1172). This includes comparing symptoms, signs, and laboratory findings with the appropriate listing criteria. 20 C.F.R. § 416.926(a); *Cook*, 783 F.2d at 1173. Here, the ALJ considered the plaintiff's case under both the childhood and the adult listings (Tr. 31–39). However, as noted above, the plaintiff waived review of the majority of the listing analysis; accordingly, the undersigned will only address the plaintiff's assertion that the ALJ's analysis erred with respect to Listings 12.04 and 12.06 (doc. 6 at 2-5).

Listings 12.04 and 12.06 can be met by meeting paragraphs A and B or paragraphs A and C. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. Here, the plaintiff has not challenged the ALJ's evaluation regarding paragraph B of the listings and argues that the plaintiff meets the listings because he meets paragraphs A and C.[7] Paragraph A of both listings cites symptoms associated with the impairments. *Id*. §§ 12.04(A), 12.06(A). Paragraph C for each listing is identical. *Id*. §§ 12.04(C), 12.06(C). Here, in evaluating the plaintiff's impairments under paragraphs B and C, the ALJ found that paragraph A of the listing was met. The ALJ found that the plaintiff was not disabled based upon the paragraph B limitations and found that the plaintiff had no more than moderate

---

[7] Based on the foregoing, the plaintiff has waived review of the paragraph B analysis provided by the ALJ.

limitations in the functional areas of understanding, remembering, or applying information;

interacting with others; concentrating, persisting, or maintaining pace; and adapting or

managing himself (Tr. 38–39).[8]

As noted, the plaintiff argues that he met paragraph C of the listings; thus, the

undersigned will focus on the ALJ's evaluation of the paragraph C criteria.  Paragraph C

requires a claimant to show:

> C.      Your mental disorder in this listing category is "serious and persistent"; that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> 1.   Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (See 12.00G2b); and
>>
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(C), 12.06(C).  The Social Security regulations

explain consideration of the paragraph C criteria as follows:

> 1.      *General*.   The paragraph C criteria are an alternative to the paragraph B criteria under Listings 12.02, 12.03, 12.04, 12.06, and 12.15. We use the paragraph C criteria to evaluate mental disorders that are "serious and persistent."   In the paragraph C criteria, we recognize that mental health interventions may control the more obvious symptoms and signs of your mental disorder.
>
> 2.      *Paragraph C Criteria*
>
>> a. We find a mental disorder to be "serious and persistent" when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that your disorder satisfies both C1 and C2.

---

[8] The plaintiff has not challenged these determinations.

10

b. The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition. We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder. If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by this paragraph.

c. The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

*Id.* § 12.00G.

As noted, the ALJ addressed Listings 12.04 and 12.06 and found that the plaintiff did not meet the paragraph C criteria of the listings (Tr. 39). As set forth in more

detail below, the ALJ's listing analysis is supported by substantial evidence and should be affirmed.

The plaintiff argues that the ALJ erred in finding that the plaintiff did not meet the paragraph C criteria because he has received regular mental health treatment (doc. 6 at 4 (citing Tr. 539, 553)); the plaintiff had inpatient treatment on one occasion (*id*. (citing Tr. 507–32)); he is noted as isolating himself and has trouble adapting to new work environments (*id*. (citing Tr. 33 (reporting testimony from the plaintiff's aunt))); he requires intermittent breaks, redirection, reminders, and supervision (*id*. (citing Tr. 384, 388)); and he becomes anxious when bored and has difficulty managing stressors (*id*. (citing Tr. 412, 489)).  However, the plaintiff's argument does not indicate that the ALJ failed to address this record evidence, meaning that he requests that this court reweigh the evidence and come to a different conclusion, which is beyond the purview of substantial evidence review.

Additionally, the majority of the evidence relied upon by the plaintiff in arguing that the plaintiff meets the paragraph C criteria is from before the plaintiff attained 18 – meaning from before the period under consideration by the ALJ with respect to the listing analysis challenged by the plaintiff.  Further, the materials relied upon by the plaintiff during the relevant period represent a cherry-picked portion of the applicable record evidence.  For example, the plaintiff references testimony from his aunt regarding his ability to function independently, but leaves out other portions of her testimony, such as that the plaintiff cooked with an air fryer, did his laundry, played video games, kept his room clean, took out the trash, applied for and got a job at McDonalds on his own, spent time with friends on the phone, and could get things at the store if he wanted them (Tr. 33, 87, 88, 91, 92).  Further, the plaintiff references a one-page summary from Wynn T. Harvey, II, M.D., listing diagnoses for which he treated the plaintiff (doc. 539), but does not reference the individual treatment records from Dr. Harvey.  Indeed, the plaintiff's longitudinal records with Dr. Harvey note that the plaintiff generally reported doing well with no medication side effects,

and other than a note regarding obesity, his examination findings were normal for visits during the relevant period (Tr. 564–67 (reporting that the plaintiff was not taking his clonidine at night because he did not need it), 567–77, 579–82, 584–87 (plaintiff encouraged to begin upper body workouts while watching television to help with weight), 590–93, 595–605, 607–29, 956–60, 1045–48). As recognized by the ALJ in evaluating the application of the paragraph C criteria, this record evidence did not support a finding that the plaintiff had marginal adjustment or a minimal ability to adapt to changes in life.

The plaintiff has not identified any other record evidence in support of his assertion that he meets the paragraph C criteria. Indeed, as argued by the Commissioner, substantial evidence supports the ALJ's paragraph C evaluation because the plaintiff does not meet the marginal adjustment threshold based on reports that the plaintiff participates in activities that require him to adapt or change his routine (by interacting with others or navigating public spaces and services) (doc. 7 at 9). Further, as recognized by the ALJ, the plaintiff reported having his own bank account and bank card that he used, spending time talking to friends on the phone (via text and video chat), eating out with family, managing his own medications (although his aunt assisted with requesting refills sometimes), going to the flea market, going to the laundromat, and using public transportation (Tr. 38–39, 64, 73–75, 82, 272–78, 317, 319). As noted by the ALJ, the plaintiff was also noted regularly as interacting appropriately with providers (other than the consultative examination wherein he did not engage with the provider) (Tr. 39–41, 494, 504, 553–55, 1151). Further, the ALJ noted that the plaintiff was able to apply for the job at McDonalds on his own and participate in an interview without assistance after he quit vocational rehab because it was boring (Tr. 65–66). In light of the foregoing, the undersigned finds that substantial evidence supports the ALJ's finding that the plaintiff's impairments did not meet paragraph C of Listings 12.04 or 12.06. Thus, the ALJ's listing analysis is supported by substantial evidence and should be affirmed.

*Residual Functional Capacity*

The regulations provide that a claimant's RFC assessment is the most that he can still do despite his limitations. 20 C.F.R. § 416.945(a). It is the ALJ's responsibility to make the RFC assessment, *id.* § 416.946(c), and the ALJ does so by considering all of the relevant medical and other evidence in the record, *id.* § 416.945(a)(3).

Social Security Ruling ("SSR") 96-8p provides in pertinent part:

The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The ruling further provides:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

In evaluating the plaintiff's case for the period of time after the plaintiff obtained age 18, the ALJ set forth the following RFC assessment:

14

> After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) with: no more than frequently stooping, kneeling, crouching, crawling, and balancing (as defined by DOT/SCO); no more than frequently climbing ramps and stairs; no more than occasionally climbing ladders, ropes, or scaffolds; no more than frequent exposure to hazards such as unprotected heights and dangerous machinery; no more than frequent exposure to dust, fumes, gases, odors, and pulmonary irritants; no more than frequent exposure to extremes of humidity, heat, or cold; limited to simple, routine, and repetitive tasks and simple work-related decisions, but is able to maintain concentration, persistence, and pace for periods for at least two hours at a time, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week; no jobs that require more than occasional close, "team-type" interaction with coworkers, sometimes referred to as tandem work; no jobs that require more than occasional interaction with the general public; can only tolerate no more than occasional change in a routine work setting; and, no jobs that involve financial transactions or the handling of money.

(Tr. 39). The RFC assessment was followed by a discussion of the record evidence (Tr. 39–44).

The plaintiff argues that the ALJ erred in finding that the plaintiff could engage in a range of medium work because he has trouble interacting with others, managing work settings, and with attention and pace (doc. 6 at 5–6). Once again, of note, the plaintiff's briefing on this matter is one page with limited reference to record evidence or analysis of the asserted error (*see id.*). As outlined above, raising an assertion of error in such a perfunctory manner waives consideration of the issue. *See supra* pp. 8. Nevertheless, the undersigned will address the ALJ's explanation of the less than medium RFC assessment based on arguments that can be gleaned from the limited contents of the plaintiff's brief.

As an initial matter, the plaintiff's RFC argument misstates the law for evaluating the RFC assessment with respect to mental impairments. The plaintiff argues that he had marked limitations in certain functional areas, which precludes the less than medium RFC assessment; however, as explained in the ALJ's decision, "limitations identified in the 'paragraph B' criteria are not [an RFC] assessment" (Tr. 39). As such, the

plaintiff's arguments rely on a misstatement of law regarding the RFC assessment. Nevertheless, the undersigned will address the ALJ's explanation of the mental RFC limitations assessed.

Here, as noted above, the ALJ examined the plaintiff's mental functioning and determined that limitations caused by the plaintiff's impairments as of his attainment of age 18 could be accounted for through the less than medium RFC assessment quoted above (Tr. 38–44). The plaintiff argues that the ALJ erred because the plaintiff had trouble interacting with others and maintaining attention/pace and had continued inpatient treatment with Dr. Harvey (doc. 6 at 5–6). The undersigned finds that the ALJ appropriately explained the assessed RFC limitations. For example, the ALJ explained that to account for the plaintiff's reports of not wanting to be around people and isolating – in light of record evidence that he spent time with family, talked on the phone with girls, video chatted with others, ate out in restaurants, and visited family – the ALJ limited the plaintiff to no jobs requiring team-type interaction with coworkers and jobs that do not require more than occasional interaction with the general public (Tr. 38, 39). The plaintiff has not referenced record evidence to support additional limitations in this functional area. For example, the plaintiff references evidence from prior to his attainment of age 18 and references little evidence from the record with Dr. Harvey. Indeed, as outlined above, the plaintiff's treatment records with Dr. Harvey indicate relatively normal examination findings (other than obesity), the plaintiff reported at times not needing his nighttime medicine, and the plaintiff reported to Dr. Harvey his medicines were working well and controlling his symptoms (Tr. 564–67 (reporting that the plaintiff was not taking his clonidine at night because he did not need it), 567–77, 579–82, 584–87, 590–93, 595–605, 607–29, 956–60, 1045–48). These records do not support additional RFC limitations to address the plaintiff's difficulty interacting with others.

16

Similarly, the ALJ explained how the RFC assessment accounted for the plaintiff's difficulties with concentration and pace. The ALJ noted that the plaintiff reported managing his own money, but that he did not finish what he started, so the plaintiff was limited to maintaining concentration, persistence, and pace for two hours at a time, was able to perform activities within a schedule, maintain regular attendance, and could complete a normal workday and work week (Tr. 38, 39). This was consistent with the plaintiff's testimony that he quit working at McDonalds to get a better job (not because of trouble concentrating) and reports by the plaintiff that he spent large parts of his day playing video games and watching television, activities that require him to maintain attention and concentration (Tr. 38, 40, 41, 64, 65, 71–72, 87, 274, 275, 320). As noted above, the plaintiff has not identified record evidence to support additional limitations in this functional area; thus, the undersigned finds that the RFC assessment is supported by substantial evidence and should be affirmed.

The United States Court of Appeals for the Fourth Circuit has held that while an RFC assessment must include a narrative describing how the evidence supports the ALJ's conclusions, there is no particular format or language that must be utilized, so long as the decision permits meaningful judicial review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Here, the ALJ's decision, with its detailed discussion of the plaintiff's impairments as well as the resultant mental RFC limitations, permits such review. As such, the undersigned finds that the ALJ's RFC assessment is supported by substantial evidence and free from legal error and should be affirmed.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision is based upon substantial evidence and is free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald<br>United States Magistrate Judge

June 26, 2026
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Room 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).